In the Matter of Anthony
Thomas MAKIN.

No. 49S00–9602–DI–185.

Supreme Court of Indiana.

Aug. 26, 1998.

Ronald E. Elberger, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

Anthony Thomas Makin, an attorney admitted to practice in this state in 1990, has been charged with lawyer misconduct stemming from his fraudulent procurement of prescription drugs for his own personal consumption. The Disciplinary Commission and respondent Makin have submitted for our approval a *Statement of Circumstances and Conditional Agreement for Discipline*, pursuant to Ind.Admission and Discipline Rule 23, Section 11(c). In the proffered agreement, the parties agree that a two year suspension from the practice of law is an appropriate discipline for the respondent's actions. We now find that the parties' agreement should be approved, and herein set forth the facts and circumstances of this case.

As a preliminary matter, we note that the respondent has been suspended from the practice of law in this state since March 11, 1996, upon this Court's receipt of notification of his conviction of a crime punishable as a felony. Ind.Admission and Discipline Rule 23(11.1).

The parties agree that on September 13, 1994, the respondent telephoned a pharmacy, identified himself as a physician, and ordered a prescription of the legend drug Stadol for a fictitious patient, "Joseph Martinelli." The respondent later appeared at the pharmacy, identified himself as Mr. Martinelli and obtained the filled prescription. On September 15, 1994, the respondent again phoned a pharmacy, identified himself as a physician calling in a Stadol prescription for "Andrew Haines" and later appeared in the store as Mr. Haines and obtained the prescription. He repeated the same procedure, using different physician and patient names, on September 19, 1994, October 2, 1994, November 12, 1994, November 13, 1994, November 15, 1994, November 16, 1994, December 15, 1994, December 16, 1994, and December 22, 1994. On each occasion, the respondent obtained a filled prescription for Stadol. As a result of these acts, the respondent was charged in Marion County with seven counts of violating Indiana's Legend Drug Act, I.C. 16–42–19–16, and one count of Procurement of a Legend Drug. He was charged in Boone County

with one count of possession of a legend drug in violation of I.C. 16–42–19–13, and one count of Procurement of a Legend Drug in violation of I.C. 16–42–19–16. He was charged in Hamilton County with one count of acquiring a legend drug by fraud in violation of I.C. 16–42–19–16. Those charges eventually led to plea agreements in Marion and Boone counties whereby the respondent pleaded guilty to two counts of Procurement of a Legend Drug, a Class D felony. In Marion County, he was sentenced under alternative misdemeanor sentencing and received a one-year term of imprisonment, with the entire sentence suspended under condition of probation. In Boone County, he was convicted of the crime as a Class D felony, sentenced to one and one-half years imprisonment, of which he served 30 days with the balance suspended with probation. The Hamilton County charges were later dismissed.

■ The parties agree that the respondent's illegal procurement of a prescription drug violated Ind.Professional Conduct Rule 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. They agree also that the respondent violated Prof.Cond.R. 8.4(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. We have found that an attorney's procurement of a prescription drug for her own consumption through forgery violated Professional and Conduct Rule 8.4(b) and (c). *Matter of Stover–Pock,* 604 N.E.2d 606, 607 (Ind.1992). The respondent here was convicted of similar crimes containing elements of fraud and deceit. We therefore find that the respondent's conduct violated Prof.Cond.R. 8.4(b) and 8.4(c).

■ Now that we have found misconduct, we must assess the appropriateness of the agreed sanction. In this analysis, we examine the nature of the misconduct, actual or potential injury, the state of mind of the respondent, the duty of this Court to protect the integrity of the profession, the risk to the public in allowing the attorney to continue in practice, and factors in aggravation and mitigation. *Matter of Helman,* 640 N.E.2d 1063 (Ind.1994). In mitigation, the parties agree that the respondent has made full and free disclosure of his chemical dependency to the Commission and has made significant progress toward recovery during the pendency of this disciplinary action. His admission of chemical dependency is especially relevant to our duty to protect the public and the profession from unfit practitioners. *See Matter of McGrath,* 506 N.E.2d 1083 (Ind.1987). The proffered discipline calls for a suspension from the practice of law for not less than two years, with reinstatement contingent upon specific chemical dependency aftercare provisions.

Aggravating the respondent's misconduct was the devious intricacy of his scheme to procure prescription drugs. Such criminal activity implicates his ability to represent others honestly and with the bounds of the law and our ethical strictures. In light of such concerns, we conclude that a lengthy suspension is in order and also conclude that we must be assured that the respondent has adequately dealt with his chemical dependency before he is ever readmitted to practice.

It is, therefore, ordered that the respondent, Anthony Thomas Makin, is hereby suspended from the practice of law for a period of not less than two (2) years, beginning May 16, 1996. At the conclusion of the two-year period of suspension, the respondent shall be eligible to petition this Court for reinstatement to the practice of law, provided he can satisfy the conditions of Admis.Disc.R. 23. In their *Conditional Agreement,* the parties have agreed upon various aftercare provisions should the respondent ever be readmitted. We adopt the parties' agreement as to those provisions. Should he be reinstated, the respondent will then be immediately subject to a two (2) year period of probation, subject to the following agreed terms and conditions:

1. The respondent shall have a continuing duty during both his suspension and his probation, and, if reinstated, to keep the Commission and the Clerk of the Indiana Supreme Court advised of his current office and home address.

2. The respondent shall remain free from the use of alcohol or other intoxicating or addicting substances, or other drugs not prescribed for medically approved therapeutic purposes;

3. The respondent shall continue in the monitoring or aftercare program in which he was participating at the time of execution of the *Conditional Agreement* which program shall include random drug testing. The respondent further agrees to maintain a professional relationship with his current treating physician or a successor physician approved by his current treating physician, and to abide by all treatment decisions and recommendations made during this period of probation.

4. The respondent shall participate at least two (2) times weekly in meetings of Alcoholics Anonymous or other appropriate twelve-step program specifically authorized and approved by the executive secretary of the Disciplinary Commission, and shall submit a written monthly report to his recovery monitor, in which he certifies under oath his compliance with this provision or sets forth under oath an instances of failure to comply with this provision and a detailed explanation therefor. The respondent shall submit to his recovery monitor the name of an individual or individuals who can personally vouch for his attendance at the meeting described above, or, alternatively, submit written proof of meeting attendance acknowledged by the initials of another individual in attendance at the meeting.

5. In addition to the meetings required by paragraph 4, the respondent shall attend at least one (1) meeting per week of the Justice Society, the Caduceus Group, the professional meeting group at Fairbanks Hospital or another equivalent support group specifically authorized and approved by the executive secretary. The Respondent shall submit a written monthly report to his treating physician in which he certifies under oath his compliance with this provision or sets forth, under oath, any instances of failure to comply with these provisions and a detailed explanation therefor. The respondent shall supply his treating physician with the name of an individual or individuals who can personally vouch for his attendance at the meetings described above.

6. The respondent shall cause progress reports to be generated by his treating physician/addictionologist at six month intervals after reinstatement. For purposes of calculating the due date of each report, a report shall be due no later than each six month anniversary of the date of reinstatement. Late reports will not be tolerated and the respondent will be deemed to be out of compliance the date after any report is due. Reports may be submitted earlier than the due date, but by no more than twenty (20) days;

7. The reports referred to in paragraph 3 above shall include at least:

a. The date on which the report was prepared;

b. The date(s) and location(s) on which the respondent was seen/interviewed/evaluated by the author of the report;

c. A description of the progress of the respondent's treatment and prognosis and any recommended changes in the respondent's treatment or aftercare program. Items in the report shall be detailed and, where appropriate, make specific reference to relevant events/facts concerning the respondent's status.

8. The respondent shall release to the Disciplinary Commission of any and all chemical dependency treatment records created before or during the probation. This consent includes all assertions of confidentiality including those in the Indiana Code, the United States Code and the Code of Federal Regulations. This consent will be automatically revoked at the conclusion of the respondent's term of probation.

9. The respondent shall waive all assertions of confidentiality or privilege associated with his treating health care providers as they relate to his treatment for chemical dependency/mental illness and related illnesses. This consent will be automatically revoked at the conclusion of the respondent's term of probation.

10. The respondent shall waive all assertions of confidentiality or privilege associated with records maintained by his employer

<br />

about the respondent's employment. If self employed, the respondent agrees promptly to provide the Disciplinary Commission with copies of the requested records, including law practice related financial records, upon reasonable request and to otherwise cooperate with such requests made by the executive secretary of the Disciplinary Commission and the respondent's monitor.

11. The respondent shall perform no less than one hundred (100) hours of community service during each year of his probation. Of said community service, no more than fifty (50) hours each year can be provided in the form of *pro bono* legal services. The respondent shall submit a quarterly report to his monitor/the executive secretary setting forth, under oath, the nature of the community service work performed, the location of such service and the length of time devoted to said service.

12. The respondent, as he has previously arranged, may perform his community services at Fairbanks Hospital where he currently participates in certain volunteer services; provided, however, that with respect to that fraction of the respondent's efforts devoted to community service, the respondent may receive the minimum compensation allowable consistent with the law if Fairbanks Hospital determines such compensation to be payable.

13. The respondent shall maintain his continuing legal education (CLE) consistent with Admis.Disc.R. 29, provided, however, that the respondent shall, in each year of his probation, obtain three hours of ethics/professional responsibility credit as part of his compliance with Admis.Disc.R. 29.

14. The respondent shall not violate the *Rules of Professional Conduct* during his period of probation.

15. The respondent shall immediately report to the Disciplinary Commission any claims made against his liability insurance carrier or any formal legal malpractice suits filed against him during the period of this probation.

16. The respondent shall immediately report to the Disciplinary Commission any criminal charges or arrests which occur during the period of his probation.

17. The respondent shall immediately report to the Disciplinary Commission any failure to comply with the terms of this order of probation in writing and specifically identify the type and circumstances of this failure of compliance.

18. Nothing contained in these terms of his probation constitutes a waiver or limitation of any of the terms of the rules governing the reinstatement process. Likewise, nothing herein constitutes a representation binding the Disciplinary Commission or this Court that the respondent's license shall be reinstated at a future date or that the reinstatement process will be dealt with in any way other than that contemplated in Admis.Disc.R. 23.

Costs of this proceeding are assessed against the respondent.